Pearson, C. J.
 

 The case discloses a most horrible murder, and the public interest demands that the perpetrator of the crime should suffer death; but the public interest also demands that the prisoner, even if he be g'uilty, shall not
 
 *213
 
 be convicted, unless his guilt can be proved according to the law of the land.
 

 The conversation between Mrs. Scott and the deceased ought not to have been admitted as evidence. At all events, no part of it except that the deceased said she was going to the Bates place. How what the deceased said in regard to the prisoner’s having come just before day, and where he was, and that she expected to meet him, can in any sense be considered a part of the acts of the deceased — being on her father’s mare, bare back, with a bundle of clothes in her lap, and coming from her father’s past A. Scott’s house, when the witness met her in the'road — we are unable to perceive. The law requires all testimony, which is given to the jury, to be subjected to
 
 tioo tests of its truth:
 
 1st. It must have the sanction of an oath. 2d. There must be an opportunity of cross examination.
 
 Dying declarations
 
 form an exception, and another exception is allowed when declarations constitute a part of the act, or
 
 res gestas.
 
 Acts frequently consist not only of an action or thing being done, but of words showing the nature and quality of the thing. In such cases, when the action or thing being done is offered in evidence, as a matter of course the words which form a part of it must also be received in evidence; as if one seizes another by the arm, saying, I, arrest you under a State’s warrant, these words are just as' much a part of the act done as the action of taking him by the arm.
 

 In this case the conversation between Mrs. Scott and the deceased, although it occurred at the time of the action or thing being done, to wit, her being in the road on her father’s mare, bare back, cannot, in any point of view, be considered a part of the act. It was entirely accidental, and consisted simply of answers to inquiries which the curiosity of Mrs. Scott induced her to make. These answers may have been true, or they may have been false, but they were not verified by “
 
 the
 
 tests ” which the law of evidence
 
 *214
 
 requires, and it was error to admit them as evidence against the prisoner.
 

 As the case must go back for another trial, we do not feel at liberty to enter into an expression of opinion in regard to the other matters of exception. But we see from the case sent that his Honor fell into the error, for which a
 
 venire de novo
 
 is awarded at this term in
 
 State
 
 v.
 
 Andrew.
 
 That is, without stating distinctly how he decided the facts, preliminary to the admission of the acts and declarations ol Ann Melton in furtherance of a common purpose to murder the deceased, upon the evidence offered
 
 to the court
 
 to establish these preliminary facts he allows the evidence to go to the jury, and instructs them that if they are not satisfied of the existence of a conspiracy between the prisoner and Ann Melton to efieet the murder of the deceased, in that case they are to give to the acts and declarations oí Ann Melton, which had been admitted as evidence to them no weight, and are not to be influenced by them. What facts amount to such an agreement between the prisoner and Ann Melton, to aid and assist each other in effecting the murder of the deceased, as to make her acts and declarations in furtherance of the common purpose evidence against him, is a question of law, and the decision in the court below may be reviewed in this court; so, what evidence the Judge should allow to be offered to him to establish these facts, is a question of law; so, whether there be
 
 any evidence
 
 tending to show the existence of such an agreement is a question of law. But whether the evidence, if true, proves these facts, and whether the witnesses giving testimony to
 
 the court
 
 touching the facts are entitled to credit or not, and, in case of a conflict of testimony, which witness should be believed by the court, are questions of fact to be decided by the Judge, and his decision cannot be reviewed in this court. See
 
 State
 
 v. George, 7 Ire., 321, and
 
 State
 
 v.
 
 Andrew,
 
 decided at this term, ante, p. 205, where the subject
 
 *215
 
 is fully explained. The remarks made in that case are ap-. plicable to this, not excepting what is said in reference to-the prolixity of cases made up for this court.
 

 In speaking of the -connection necessary to be found between the prisoner and Ann Melton as preliminary to the admissibility of her acts and declarations, in furtherance of the common purpose, as evidence against him, I have used the word “
 
 agreement
 
 ” to aid and assist each other to effect the death, in preference to the word
 
 conspiracy;
 
 for, although they have the same meaning, yet the latter is apt to lead to a confusion of ideas. If parties are indicted for a conspiracy to murder or do some other unlawful act, in that case the issue joined on the plea of
 
 not guilty
 
 is the fact of the conspiracy; the endeavor to prove it must, of course, be given to the jury and passed upon by them. Otherwise, where the indictment is for the murder or other act, and the fact of an agreement to aid and assist is only preliminary to the admissibility of the acts and declarations of one against the other.
 

 Per Curiam.
 
 Venire de novo.