L. SIMON et al. v. S. H. MANNING.

*Evidence—Res Gestæ.*

1. When act is competent evidence, what the actor says while doing it, qualifying or explanatory of it is admissible as part of the *res gestæ* ; but where the declarations are merely narrative of a past occurrence they are not admissible.

2. The admissions made by one in possession of property, in respect to his ownership thereof, to an officer who is about to seize it under execution are competent against him upon the trial of an issue involving the title.

3. But such admissions cannot be proved by the unsworn declarations of the person to whom they were made.

This is a CIVIL ACTION, which was tried before *Connor, J.,* at January Term, 1887, of NEW HANOVER Superior Court.

The defendant, Sheriff of New Hanover County, having in his hands an execution against L. G. Cherry, seized and sold a stock of goods as his property, for which the plaintiffs claiming title bring this action to recover damages. The only question made at the trial was as to the ownership of the goods.

The said L. G. Cherry, examined as a witness for the plaintiffs, testified among other things, that one C. H. Strode, then a deputy of the defendant and since deceased, came to the store to make the levy when he was informed by the witness, who forbade his levying, that the goods were not his but belonged to his wife, one of the plaintiffs under whom the others claim ; that the deputy left and consulted with the attorney of the plaintiffs in the execution, by whom he was directed to return and seize the goods, which he did, closing up the store in which they were. This evidence was introduced without objection from the defendant.

To meet this testimony the defendant, among other witnesses, introduced one W. H. Shaw, the Deputy Sheriff who

had charge of the office in the defendant's absence, and who had placed the execution in the hands' of Strode and instructed him to levy upon the stock then in possession of L. G. Cherry. The witness having in answer to an inquiry, if he had delivered the writ to the other deputy to be executed, said that he did. Defendant's counsel proposed to ask this further question: "What did Strode state to you touching the execution when he returned it?" To this question the plaintiff objected, because Strode was dead, and the defendant proposed to introduce a statement of his, in evidence, made in the absence of the plaintiffs. His Honor asked the object of this question, and the defendant's counsel replied, that he proposed to show by the witness that Strode in making his return to the execution came direct from Cherry to witness and said that L. G. Cherry did not state that the property was his wife's, the said Mrs. Mary P. Cherry, but asked that his exemption should be laid off, thus exercising a right of ownership over, and claiming the property to be his own. And the defendant claimed that this return or declaration of Strode's was admissible upon four grounds:

1. Because the plaintiffs had opened the door to its admission by introducing the transaction and statement made by and between L. G. Cherry and the said Strode, above stated, in evidence and that this was but a continuance of the same transaction.

2. To contradict the said statements of L. G. Cherry so made as above stated.

3. To corroborate the witness, W. H. Shaw, then on the stand, in his statement as to what he did in consequence of the return made to him by Strode.

4. That they were admissible as a part of the "*res gestæ.*"

His Honor then asked the witness how far it was from Cherry's store to where witness was, and upon witness replying that it was about two blocks and a half, his Honor said that the declarations were not a part of the "*res gestæ,*" and

ruled out the answer to the said question. To which the defendant excepted. The witness then stated that in consequence of what Strode said to him he summoned three appraisers to lay off Cherry's personal property exemption; but the said exemption was never laid off, because L. G. Cherry approached him about two hours after he had summoned the appraisers and told the witness that he had concluded not to claim his exemption.

The jury returned a verdict for the plaintiffs, and, from the judgment rendered thereon, the defendant appealed.

*Mr. Jno. D. Bellamy,* for the plaintiffs.
*Mr. Thos. W Strange,* for the defendant.

SMITH, C. J., (after stating the case). The offer was to prove that L. G. Cherry did not, as he himself testified, deny that he owned the goods in his charge and assert that they belonged to his wife, but, on the contrary, demanded that his exemptions should be laid off, thus exercising a right of ownership of them. The testimony itself was perfectly competent in contradiction of the statement of L. G. Cherry, for it was but a different version of what passed between him and the officer when the latter came to make levy under the writ. Had any one else been present and heard the conversation that passed between the parties, he would have been permitted to testify to it. But the proposal was to prove it by the unsworn declaration of the deputy, made to the other deputy, after his return from the store. This was clearly inadmissible, since testimony comes to the jury under the sanction of an oath, and this assurance of the verity of the testimony is wanting, and the law imperatively demands it when witnesses give their evidence. The cases cited in the brief of defendant's counsel are mostly to the effect that when part of a conversation is given in, the party against whom it operates has a right to have all of it heard. Its

admissibility is defended upon the further ground that the words spoken accompany the official act of levying the execution and form part of the *res gestæ*, and for this is cited the case of *Grandy* v. *McPherson*, 7 Jones, 347.

It is undoubtedly a rule, that what one says while doing an act, receivable in evidence, qualifying and explaining the act, becomes a part of it and may be shown, and such is the principle of this decision, and the ruling goes no further. The point in the case was the alleged levy upon a store, and a witness swore that he saw the defendant go to the cabin where the store was, about that time, and that he came thence to witness in the field and engaged him to take the custody of the store. This testimony was given after the endorsed levy upon the writ had been shown. The Court declared the exception to the testimony untenable, and says: "The visit to the cabin and the contract with the witness for the future care of the store 'were *facts* fit and proper to be proved.' The latter," continues the opinion, "could only be proved by the words used between the parties, and the former would be shorn of much of its significance and weight, *unless accompanied by the declarations explanatory of its object.* The whole conversation, therefore, between defendant and witness McCoy was competent as part of the *res gestæ*. The declarations received were an essential part of the proceeding in making the levy under the writ, and were admissible for the same reason that the act itself was, and to give it meaning and character."

The rule is stated with great clearness by Greenleaf in the first volume of his excellent treatise on the law of evidence, § 108, thus: " His declarations made *at the time of the transaction and expressive of its character, motive, or object, are regarded as verbal acts indicating a present purpose and intention,* and are therefore admitted in proof like any other material facts."

Again, in § 10, he further observes, "that where declarations offered in evidence are merely *narrative* of a past occurrence (the italics are the author's) they cannot be received as proof of such occurrence."

So, when the declarations of one in possession of land were offered to show the extent of his title under a deed, and that a fee passed were refused, the Court upon a review of the exception to the exclusion, said: "The acts and declarations accompanying possession in disparagement of the declarants' title, or otherwise qualifying his possession, are received as part of the *res gestæ*," and the citation from Greenleaf, as to the declarations that are subsequent and narrative merely, are reiterated in *Roberts* v. *Roberts*, 82 N. C., 29.

Brought to the test of the rule thus established, the *declaration* of the deceased deputy, as to what occurred at the store and what was said by the witness Cherry, were properly rejected, inasmuch as it was but a statement or narrative of what had passed, and cannot be received as evidence of the fact, except it reaches the jury through *sworn* witnesses. Undoubtedly the deceased could have testified upon the matter because it had been given in evidence by the plaintiff, but not what the deceased said it was, no more since his death than if he were living. The words are not associated with the *act of the officer* and explanatory of it, for the levy is not disputed and as such needs no explanation.

There is no error, and the judgment is affirmed.

Affirmed.