### SHELTON v. SOUTHERN RAILWAY COMPANY.

(Filed 4 May, 1927.)

**1. Negligence—Evidence—Subsequent Changes Made at Place—Appeal and Error.**

Where the condition of a railroad track in an action against the company to recover damages for an alleged negligent injury is a material element of the negligence relied on by the plaintiff, evidence is incompetent upon that issue alone, which tends to show that soon after the occurrence complained of the defendant caused the place to be fixed so as to avoid like consequences in the future.

**2. Same—Independent Changes.**

Where the evidence of subsequent repair of conditions as showing negligence of defendant is relied on, if competent it must be shown by the plaintiff to have been made by the defendant and not by an independent agency for its own purposes.

**3. Evidence — Appeal and Error — Objections and Exceptions — Cross-Examination—Waiver.**

Where testimony of a witness has been erroneously admitted by the court to be introduced at the trial after the appellant had duly and

properly excepted thereto, upon cross-examination he may question the same witness upon the subject-matter of his exception without waiving any of his rights on appeal.

CIVIL ACTION, tried in the county court of ROCKINGHAM, at September Term, 1926.

The evidence of plaintiff tended to show that on the night of 10 October, 1925, plaintiff left Reidsville in a Ford touring car, going in the direction of Greensboro, and arrived at the Haw River crossing between seven and eight o'clock; that he saw a train upon the track of the defendant about sixty or one hundred yards, going north, and stopped his car and waited until this train had passed the crossing. After the train had passed the lights on the crossing went out, and the plaintiff started across the track of the defendant.

The plaintiff testified: "Before going on the crossing after the northbound train had passed, I looked toward Greensboro and towards Reidsville for an approaching train and did not see any, looked at the lights, where the lights are supposed to be, and it was dark, and I started across. . . . The train did not blow its whistle nor ring any bell before approaching this crossing. When I came to myself I had a severe headache, I was aching all over, my neck was swollen up."

Witness for plaintiff crossed the track at this public crossing just ahead of the plaintiff, and testified that when the fore wheels of his car were on the track the headlights of the southbound train shone in the side of his car; that thereupon the engineer of defendant's train blew three quick blasts, and witness hurried across; that almost immediately following the danger signal from the engine witness heard the crash of the impact of the train and plaintiff's car. There was evidence that the train was running about sixty miles an hour, and that no whistle was blown and no bell rung, and no warning of any kind given of the approach of said train prior to the danger signal immediately before the impact.

Issues of negligence, contributory negligence, and damages were answered in favor of the plaintiff. The defendant appealed to the judge of the Superior Court upon the exceptions and assignments of error duly taken at the trial. The appeal was heard at the February Term, 1927, by *Harding, J.,* who overruled all of defendant's exceptions and affirmed the judgment of the county court. Whereupon the defendant appealed.

*Glidewell, Dunn & Gwyn for plaintiff.*
*Ivie, Trotter & Johnston for defendant.*

BROGDEN, J. Plaintiff alleged "that in addition to the failure of defendant to blow his whistle and to ring his bell and otherwise give the plaintiff the proper necessary warning, the defendant maintained an

embankment upon its right of way, as hereinbefore described, which extended within a short distance of said crossing, which said embankment obstructed the view of plaintiff and prevented him from seeing said train until same had approached him within a short distance of said crossing, and until plaintiff had proceeded to cross said track; that the defendant failed to provide a proper electric signal or gong at said crossing, in that the red signal light was not shining or burning, and thereby the plaintiff was not warned of the approach of said train."

The defendant denied the foregoing allegations.

A witness for plaintiff was asked: "(Q.) I will ask you to state whether or not the embankment which was there at the time of this wreck is there at the present time. (A.) No, sir. (Q.) Please state what has happened to it since the time of the wreck. (A.) It has been moved away. (Q.) How long after the wreck was it before it was moved? (A.) I don't recall exactly, but I do recall talking with the people who were doing the work. (Q.) Over how much distance, or about how much of that bank was cut down or moved? (A.) I don't know exactly, but it was something like 150 feet of it; something in the neighborhood of that."

To all of these questions, except the first, the defendant objected. The trial judge admitted the evidence, and the defendant excepted.

Another witness for plaintiff was permitted to answer the following questions over the objection of defendant:

("Q.) Describe the condition of that embankment, or where the embankment was, and describe what you saw. (A.) I didn't see it moved. (Q.) State what you did see. (A.) From appearances, it is new soil there, and the places along the edge of the cut where the cut goes down in the railroad there is a little embankment down to the bottom of the cut, and I saw a plow point and another piece of machinery there, and it had practically no vegetation on it; you can see it is new soil. (Q.) Over what distance did that condition extend in feet, parallel with the railroad? (A.) 172 feet."

This evidence was not admitted in connection with a description of conditions existing at the time of the injury, or for the purpose of identifying the crossing where the injury occurred. It would seem apparent that the sole object of the testimony was to show changes made by the defendant near the crossing after the injury had occurred. The legal question raised, therefore, is, under what circumstances may evidence be offered to show changes, subsequent to the injury, made upon or near the premises where the injury occurred, or in the instrumentality causing the injury?

In *Lowe v. Elliott,* 109 N. C., 581, the Court said: "While we do not say that there may not be peculiar cases in which such testimony may be

relevant, we are entirely satisfied with the above reasoning as applicable to the facts of the present case. The testimony was improper, and probably had a very important influence with the jury in making up their verdict."

In *Aiken v. Mfg. Co.*, 146 N. C., 324, *Connor, J.*, delivering the opinion, said: "We are constrained, however, in view of the decisions of this Court, and the almost uniform opinion of text writers based upon the decisions of other courts, to order a new trial, by reason of the error committed in admitting the evidence of the change made in the platform after the injury was sustained by plaintiff."

In *McMillan v. R. R.*, 172 N. C., 854, it is held: "The subsequent changes in signals or warnings for additional safety were properly ex-cluded under the circumstances as proof of negligence. Precautions against the future cannot be considered as an admission of actionable negligence in the past." The opinion of the Court approved the state-ment of *Baron Bramwell* as follows: "People do not furnish evidence against themselves simply by adopting a new plan in order to prevent the recurrence of an accident. I think that a proposition to the contrary would be barbarous. It would be, as I have often had occasion to tell juries, to hold that, because the world gets wiser as it gets older, there-fore it was foolish before." The Court, in its opinion, quotes *R. R. v. Hawthorne*, 144 U. S., 202 (36 L. Ed., 405), as follows: "Upon this question there has been some difference of opinion in the courts of the several states. But it is now settled, upon much consideration, by the decisions of the highest courts of most of the states in which the question has arisen that the evidence is incompetent, because the taking of such precautions against the future is not to be construed as an admission of responsibility for the past, has no legitimate tendency to prove that the defendant had been negligent before the accident happened, and is calculated to distract the minds of the jury from the real issue, and to create a prejudice against the defendant."

The general rule, established by the overwhelming weight of authority, is that evidence of such subsequent changes is not admissible to show negligence, nor as an admission of negligence. There are, however, certain clearly established exceptions to the general rule within which such evidence is competent. These exceptions may be classified as follows:

(1) Where such evidence tends to show ownership or control of the place where the injury occurs, where such ownership or control is con-troverted; (2) when the question in controversy is as to whose duty it was to make repairs; (3) to contradict a witness; (4) to show that the injury was brought about in the manner alleged; (5) to show existing conditions under certain circumstances at the time of the injury. *Myers*

43—193

*v. Lumber Co.,* 129 N. C., 252; *Blevins v. Cotton Mills,* 150 N. C., 493; *Tise v. Thomasville,* 151 N. C., 281; *Pearson v. Clay Co.,* 162 N. C., 224; *Boggs v. Mining Co.,* 162 N. C., 393; *McMillan v. R. R.,* 172 N. C., 853; *Muse v. Motor Co.,* 175 N. C., 466; *Farrall v. Garage Co.,* 179 N. C., 389; *Ledford v. Lumber Co.,* 183 N. C., 614.

The testimony admitted by the trial court in this case does not fall within any of the exceptions. While the defendant entered general denial to all of the allegations in paragraph twelve of the complaint, there was no evidence offered by it denying the existence of the embankment some distance from the crossing at the time of the injury. So that the existing conditions, with respect to the embankment, prevailing at the time plaintiff was struck by the train were not in controversy, and this is the only possible exception to the general rule under which the testimony objected to could be classified. Moreover, there was no evidence that the embankment near the crossing was cut down by the defendant, or by its direction and approval. Indeed, the undisputed testimony was to the effect that any dirt that had been removed therefrom was moved by the Highway Commission.

The plaintiff, however, contends that, even if the evidence was incompetent, in the first instance, the defendant lost the benefit of its exception by virtue of the fact that on cross-examination of one of plaintiff's witnesses the following testimony was elicited: "There has been a whole lot of road work done in the last year, and they used metal machinery. Of my own knowledge, I do not know that there has ever been any work done there, cutting down a bank, or how much was cut down." And further, that witness for the defendant testified: "The railroad has never moved any dirt off this fill since 10 October, 1924. . . . The State Highway people are the only people I know anything about getting any dirt." . . .

It is thoroughly established in this State that if incompetent evidence is admitted over objection, but the same evidence has theretofore or thereafter been given in other parts of the examination without objection, the benefit of the exception is ordinarily lost. *Smith v. R. R.,* 163 N. C., 143; *Tillett v. R. R.,* 166 N. C., 515; *Beaver v. Fetter,* 176 N. C., 334; *Marshall v. Tel. Co.,* 181 N. C., 410.

The principle of law relied upon by the plaintiff is thus stated in the headnote of *Hamilton v. Lumber Co.,* 160 N. C., 47: "The erroneous admission of evidence on direct examination is held not to be prejudicial when it appears that on cross-examination the witness was asked substantially the same question and gave substantially the same answer."

This rule is sound and wholesome, and tends to confine the inquiry to the points in issue, and obviate prolix and needless questioning of a witness, and endless repetition of testimony; but when a trial judge

admits evidence over objection, it thereupon becomes proper evidence to be considered by the jury so far as the particular trial in the Superior Court is concerned, and the rule does not mean that the adverse party may not, on cross-examination, explain the evidence or destroy its probative value, or even contradict it with other evidence, upon peril of losing the benefit of his exception.

"The right to have an opportunity for a fair and full cross-examination of a witness upon every phase of his examination-in-chief is an absolute right, and not a mere privilege. Cross-examination 'beats and boults out the truth much better than when the witness only delivers a formal series of his knowledge without being interrogated.'" *Varser, J.,* in *Milling Co. v. Highway Commission,* 190 N. C., 692, citing authorities. That this interpretation of the rule is in accord with the greater weight of authority will appear from an examination of decisions upon the subject in other jurisdictions.

In *Bank v. Middleton,* 201 Pac., 683 (Montana), it appeared that defendant's witness, on direct examination, related a conversation with a person who was not a witness in the case or party to the suit. Plaintiff objected to the conversation on the ground that it was hearsay. The objection was overruled, and an exception duly noted. On cross-examination the conversation was repeated. Plaintiff assigned error in the ruling of the court admitting the testimony. The defendant contended that since the plaintiff had cross-examined the witness and elicited a repetition of the testimony objected to, the error, if any, was thereby cured or waived. The Court says: "We have carefully analyzed the cases cited by defendants, and find that, while they state the rule of curing error by cross-examination, yet from the facts and circumstances of each case it is plainly evident that they are in no sense applicable to the point as it is involved here." In *Barker v. R. R.,* 126 Mo., 143, the Court said: "Nor can it matter, in the result, that the defendant's counsel, on cross-examination, asked the witness to repeat his account of the interview with the conductor. That course did not amount to a waiver of the right to urge the exception already saved to the ruling of the court in admitting the interview. Counsel might properly conform to that ruling for the purposes of the trial, without thereby waiving the right to review the admission of incompetent evidence that had come in, over his objection. After that evidence was before the jury, he might then combat it or meet it, as best he might, without waiving the exception already taken." In *Marsh v. Snyder,* 14 Neb., 237 (15 N. W., 341), the Court said: "Where an exception is duly taken to the admission of illegal testimony, it is not waived by mere cross-examination of the witness respecting it." In *Cathey v. R. R.,* 104 Tex., 39, 33 L. R. A. (N. S.), 103, the Texas Court said: "There are cases holding that

objections to testimony are waived when the objecting party on cross-examination subsequently goes into the same matter, but this is clearly against the weight of authority. It would indeed be a strange doctrine, and a rule utterly destructive of the right and all the benefits of cross-examination to hold a litigant to have waived his objection to improper testimony because, by further inquiry, he sought on cross-examination to break the force or demonstrate the untruthfulness of the evidence given in chief, in the event, as would most usually occur, that the witness should on his cross-examination repeat or restate some or all of his evidence given on his direct examination."

In *Bank v. Kelly,* 152 N. W., 125 (North Dakota), the defendant introduced testimony to the effect that the cashier of the plaintiff bank had agreed that the defendant would not be required to pay the note. Plaintiff objected and excepted to the admission of this testimony. The defendant insisted that the plaintiff was estopped to claim the benefit of his exception for the reason that he had cross-examined about the same matter. The Court said: "It is true that there are cases holding that objections to testimony are waived when the objecting party on cross-examination subsequently goes into the same matter, but we do not believe that these holdings are sound in principle, and they are clearly contrary to the weight of authority. . . . We are satisfied that the plaintiff did not waive the erroneous admission of evidence over its objection by cross-examining the witness on the same subject; but that it had the right to attempt to destroy its harmful effect by cross-examination, if possible."

In *Electric Co. v. Corbin,* 72 Atlantic (Md.), p. 610, the Court said: "When testimony has been admitted and an exception noted, counsel may deem it necessary to cross-examine the witness on the subject; and, if it is simply a cross-examination, he ought not to be deprived of his exception: *Provided,* the record shows he does not intend thereby to waive it, and that ought to be inferred when it is strictly cross-examination. There is perhaps some confusion in the cases on this subject, but the rule ought not to be carried to the extent of placing an attorney in the position that he must either waive his exception or permit the evidence in chief to stand without cross-examination."

The Indiana Court, in *Washington, etc., Co. v. McCormick,* 49 N. E., 1086, held: "After the court had held, over the appellant's objection, that the evidence was competent, and had permitted appellee, who had the burden, to introduce such evidence to maintain his case, appellant, in seeking to overcome the case made by appellee, could follow the theory laid down by the court without impliedly admitting the court's theory to be right, and without waiving his right to question the court's action."

The California Court, in *Jameson v. Tully,* 173 Pac., 577, said: "The respondent does not, in fact, attempt to justify the admission in evidence

of these written and oral statements of the wife, implicating the defendant in her transgression, except upon the utterly untenable ground that the defendant, having, after the admission in evidence of the plaintiff's testimony as to these matters over his objection, undertaken to cross-examine the plaintiff thereon, in so doing waived his objection to their admissibility and his right on appeal to complain of the court's error in their admission. The authorities cited by counsel for the respondent in support of this contention do not sustain it. The cases cited all refer to the later introduction by the objecting party of independent evidence to the same point and effect as that to which the evidence objected to related. By the presentation on his own part of such independent proofs the objecting party, of course, waives his objection and point upon appeal; not so, however, when the objecting party undertakes to exercise his right to cross-examine a witness as to statements to which he has erroneously been permitted to testify. Were it otherwise, one of the main functions of cross-examination would be most seriously impaired; for a party, after rightfully objecting to the admission of evidence, may, by his cross-examination, lay the foundation for an obviously proper motion to strike it out, or may compel its contradiction or withdrawal, or may utterly destroy its effect, and thus render unnecessary his remedy by appeal from the court's erroneous action."

The Virginia Court, in *Virginia Power Co. v. Davidson, Admr.*, 89 S. E., 229, in discussing the question, said: "In this state of the record, we have no hesitancy in holding that the subsequent cross-examination of other witnesses on this subject, without formally repeating the objection, and the introduction of rebuttal testimony by the defendant, did not waive the previous objection, and that the motion to exclude was a timely and proper method of further saving the point."

The South Carolina Court, in *Green v. Shaw,* 134 S. E., 226, decided, 19 July, 1926, in an able and discriminating opinion by *Justice Stabler,* holds: "The defendant in this case offered as witnesses two Columbia physicians to testify to his reputation as a physician. The appellant strenuously objected to this testimony, but the court overruled his objection and admitted the testimony. The appellant having done all in his power by proper and timely objection, to exclude the objectionable testimony, elicited on cross-examination of the same witness a repetition of the same testimony that had been given on direct examination. Without making the testimony elicited the testimony of the cross-examining party, cross-examination may serve a number of useful purposes in the trial of a case, such as, for instance, testing the credibility of the witness or combating the effect of the testimony upon the minds of the jury. And we are unable to see why a litigant who has duly objected to the admission of incompetent testimony should be required to choose between

foregoing the opportunity to accomplish such legitimate purposes through cross-examination of the testifying witness and waiving his right of appeal based on the court's error in admitting the testimony."

"The appellant's cross-examination of the witness in the case at bar coming clearly within the limits of strict cross-examination as herein set forth, we hold that she did not waive thereby her right to have her objection to the admission of the incompetent testimony reviewed on appeal. This holding is not in conflict with any rule laid down by this Court heretofore, and is supported by the great weight of authority."

The same rule, contained in the foregoing authorities, has also been announced and adhered to by the courts of South Dakota, West Virginia, New York, and Oregon. *McIlbaine v. First National Bank,* 146 N. W., 574 (South Dakota); *Poteet v. Imboden,* 88 S. E., 1024; *Woods v. Buffalo R. R. Co.,* 9 N. E., 505 (New York); *Wallace v. American Life and Ins. Co.,* 225 Pac., 192 (Oregon). This case was decided 15 April, 1924, and contains an imposing list of authorities.

We are of the opinion that, upon the record as presented, the defendant did not waive his exception to the evidence erroneously admitted by the trial court, because the cross-examination was strictly confined to the point, and the rebuttal evidence as to the moving of the dirt was no more than a mere explanation of the testimony erroneously admitted. Therefore, under the authorities, for the error specified, a new trial must be awarded.

There are other grave exceptions in the record, but, as they may not occur at a subsequent trial, they will not be discussed.

New trial.